Good morning, everyone. Excuse me for interrupting. Good morning. Please be seated. All right. Our 11 o'clock case is case number 4131113, people v. Winger, for the appellant Pamela Rubio. Very well. And for the appellant Linda McClain, I will explain to the attorneys that Justice Applin is the third member of this panel. He cannot be here today. He has read the briefs. He certainly will listen to the audio recording and fully participate in the decision that this court ultimately reaches. Having said that, please proceed. Counsel, if I can interrupt you a second. I said it was case number 4131113. That is correct, but this is a consolidated matter. And the other two numbers, I want to make it clear for the record, also include 4140014 and 4140488. Excuse me for the interruption. Now please proceed. Thank you. Good morning, Your Honors. Again, my name is Pamela Rubio with the State Appellate Defender's Office, and I'm here on behalf of Mark Winger. May it please the Court. In Mark Winger's brief, we raised three issues on appeal. This morning, I'd like to focus on the first issue relating to his DNA motion, but I'm happy to answer questions on any of the issues. One would be hard-pressed to find a better case suited for DNA testing under Section 116-3 than this case, where the State's evidence against Mark Winger was very close, consisting of circumstantial evidence made up of imprecise scientific evidence and unreliable biased witness testimony, where identification has always been at issue in this case, and where the testing Mark Winger seeks has the scientific potential to produce new, non-cumulative evidence materially relevant to his claim of actual innocence. Mr. Winger met all of the elements listed under Section 116-3 to be entitled to DNA testing. Specifically, Mr. Winger asked for low-copy number DNA testing on touch DNA relating to specifically the handle of a hammer and Roger Harrington's clothing, and he established a prima facie case that identity was at issue. He has always contested his guilt and has denied killing Donna Winger and claimed that he killed Roger Harrington in defense of Donna. This case always boiled down to who killed Donna Winger, and so identity clearly was the issue in this case. Additionally, he established a prima facie case that chain of custody has been maintained, and we know that by a few different reasons. First, the party stipulated to chain of custody at the trial level below, and the state again stipulated to the chain of custody having been maintained during the hearing on the DNA motion that proceeded at the trial level below. At the end of the trial, defense counsel asked that the evidence be impounded, and the trial court allowed that. Additionally, Section 116-4 relating to the preservation of evidence requires that if the state wants to destroy or discard of any preserved physical evidence in a murder case, that a hearing has to be conducted in order to do so. In this case, no such hearing was ever conducted. Mark Winger did establish a prima facie case that chain of custody has been maintained. He also established the testing, that the testing that he seeks now was not done at the time of trial. And again, the state stipulated below that touch DNA was not done, that DNA testing was not done on touch DNA in this case. And while there are a few pieces of Roger Harrington's clothing that underwent some DNA testing, it's not clear whether STR testing was done or RFLP, but we do know for sure that with respect to Roger Harrington's clothing, the pieces that Mark Winger is now asking be tested for low copy number DNA testing has never been done, has never been tested for low copy number. And with respect to the handle of the hammer, the only test that was performed on the hammer itself was fingerprint analysis, which could not be actually completed because the fingerprint on the handle of the hammer was smudged. And so no analysis could actually be conducted. No DNA testing has ever been performed on the hammer, specifically on the handle of the hammer. The testing that Mark Winger is asking for, low copy number testing, can be done on the fingerprint of the handle. So while the smudged fingerprint might not have been good enough to conduct fingerprint analysis, it certainly could be good enough to proceed with low copy number DNA testing. Additionally, the testing... Well, ultimately, what does your client wish to accomplish with the additional testing? I'm not... it's not clear to me, given all the evidence in this case, that would amount to or make any difference in the final determination of actual innocence. Well, Mark Winger wants to establish and believes that DNA testing will establish that Roger Harrington's Touch DNA is on the handle of that hammer, which would support his defense that Roger Harrington actually murdered his wife. It would also support his defense that he shot Roger Harrington in defense of his wife. Additionally, he's asking that Roger Harrington's clothing be tested for Touch DNA to rule out that Mark Winger rolled Roger Harrington's body over so that he could stage the murder scene, like the state's theory at trial suggested. If DNA testing results that Mark Winger's Touch DNA or Mark Winger's DNA is not on Roger Harrington's clothing or body at all, that would go a long way to supporting Mark Winger's defense that he didn't stage the crime scene and the incident occurred in the fashion that he testified to at trial. The state's case and the state's version of events was completely speculative. And so these two tests could actually support Mark Winger's version of the events and it could be materially relevant to his claims of actual innocence. At this stage, what do we know in terms of the scientific capability of Touch DNA to be performed on the handle of the hammer? What does the record establish here? Because there wasn't anything done via prior hearing in the trial court, correct? Correct. So how are we to make that determination as to whether or not Touch DNA testing has the scientific potential to produce this new evidence? You're suggesting here that Touch DNA could establish whether or not Harrington held the hammer. What do we know about whether or not that's scientifically possible? Well, we know that Touch DNA is essentially referring to DNA testing on a very small amount of DNA that is transferred by touch rather than by substance, rather than by blood or semen or saliva. That's what it means when we refer to Touch DNA. Low copy number DNA analysis is the type of analysis that Touch DNA is analyzed by. And it uses the same methodology that has been accepted by this court time and time again and has been accepted in the scientific community as reliable. I'm sorry, generally accepted in the scientific community, which is STR analysis and amplification. And both of those types of procedures and processes have been accepted by this court as generally accepted in the scientific community. And so now that technology has advanced since the time of the original testing in this case, we can do testing on very minute amounts of DNA. And that's what he's referring to in his motion for DNA testing. It seems that it's being discussed in the abstract in the briefs. There are articles supporting the scientific acceptance of Touch DNA, but the state in its brief starts suggesting that specific problems exist in this case given the nature of the pieces of evidence that would make Touch DNA testing impossible, as I understand it. And how are we as a court of review to accomplish a determination as to whether or not this is something that has the scientific potential to produce new evidence that's material to the issue you're suggesting here? It would seem that there would have to be something done at the trial court in the way of a fry hearing. Well, and that can be done. But here we're talking about a DNA motion. And so Mark Winger only needs to establish that the testing that he's seeking, DNA testing, has the scientific potential as it stands, as a general proposition, to produce new non-cumulative evidence materially relevant to his claims. So the weight and the reliability of the actual results of this test are really not at issue for this court. Well, isn't there, and I don't know this, I'm asking you, is there a burden on the proponent of that evidence in the trial court to establish something beyond just a mere statement that it could produce evidence that has the scientific potential to produce new non-cumulative evidence material to an issue? Is there a burden on the proponent to suggest in this case that it is likely to have that potential? He has to establish that the testing employs a scientific method accepted in the scientific community, and he also has to establish that it has the scientific potential to produce this evidence. I think that stating that DNA testing, which is again, STR testing and PCR amplification, has the scientific method to produce new non-cumulative evidence is enough in any case. And if you look at any DNA motion case, there's always a risk that the motion could be granted, testing could be done, and not enough DNA evidence is available for an accurate result. And so it's up to the expert at that time who's doing the analysis to determine, is the sample large enough? Is the threshold, does it have to be dropped too low to be reliable? Those are all factors that come into play in any DNA case. And in fact, there's STR testing cases that allow for the admission of five-point tests and seven-point tests. Now we're at 13, but the admission of this evidence has happened. And so we're even at a lower burden here where we're just asking that the testing be performed. Once the tests come back, then Mr. Wenger would file a post-conviction petition if the results were potentially in his favor, and then we could go from there. At the post-conviction hearing, the state can make the argument that the testing was unreliable or that there was too much contamination. But those issues are always in play in a DNA motion case. But you're saying that the proponent of this additional testing has no burden to establish that the item of physical evidence in this particular case is susceptible to being tested and likely to be able to produce a scientific result. Because you would agree that there are conceivable situations where whatever the item of evidence might be on its face, it's incapable of having that particular scientific test performed on it. I do think that the petitioner has a burden to state and prove that the testing that he's seeking has the scientific potential to produce material evidence. And I think that Mark Wenger met that burden. And I don't think that that burden is as high as proving, needing to prove at this stage, that the outcome of the testing would be, you know, that the results would be very high or very strong or very reliable. That all goes to the weight of the evidence later. But at this point, he needs to establish that the scientific method has the potential to produce relevant evidence. And here I think he met that burden. Just so I understand you, your argument is that the touch DNA can be differentiated from other types of DNA. Is that what you're saying? Because there's already inheritance DNA on the hammer. We know that, correct? On the head of the hammer, yes. It wasn't tested for DNA, but according to the version of the events, Roger Harrington was struck by the head of the hammer and there was blood on that hammer. What Mark Wenger specifically is asking for is touch DNA analysis on the fingerprint of the handle of the hammer. And the handle of the hammer is actually rubber in nature and would be a more non-porous surface. The individual who testified about inventorying the hammer and who identified the hammer in court looked at the hammer and said, yes, it's in the same condition as it was when I put it in that bag. The blood is still there. The fingerprint is still there, except that some fingerprint analysis was performed and there's some residual glue from that analysis. But the actual DNA substance would be the fingerprint. Touch DNA is not different from any other kind of DNA. What touch DNA means is that DNA testing can be performed on such a small amount of DNA that even touching an object could leave enough of a residue to do DNA testing and successfully result in a DNA profile. So in particular, that handle, that's what he's referring to. And then in terms of Roger Harrington's clothing, he asked for testing on, I believe, his socks, his pants, and his shirt. Again, for touch DNA, so that presumably if one were to roll a body over that's inert and as large as Roger Harrington's, the person rolling the body over would have transferred some DNA material. And, you know, the more an object is touched, the more likely DNA is to be left on that object. So the hammer was wielded for probably longer than 60 seconds. And the hammer, it's actual proof that the fingerprint exists. And so he's just asking that that testing be done using low copy number DNA analysis. Given how weak the state's case was against him, DNA testing is the gold standard of scientific evidence. Compare that to the scientific evidence presented by the state of trial, which was consisting of a few blood type, blood typing analyses, which just showed that some blood of hers was in some places and some blood of Roger Harrington's was in other places, and blood spatter evidence, which is a very, as the experts themselves testified to, is a very subjective science. And compare that to the DNA testing that Mark Winger is asking for. At this point, the statute allows for testing and retesting in DNA situations so that more clear results can be obtained. And so the seeking of DNA, further DNA analysis in this case, is in line with the statute's intent. In fact, the statute has been amended since the first time Mark Winger filed a DNA motion. And again, after he filed this DNA motion, to be more broad and to allow DNA testing after things have been, after items have been retested, using new methodology. And they even included the language that even if the test results do not lead to exonerating evidence. And that's exactly what we have here. That's exactly the standard that Mark Winger has established. If there are no further questions, we ask that the court reverse the trial court's denial of Mark Winger's DNA motion and remand the case for proper testing. Okay, thank you for your argument. You will have rebuttal. Ms. McClain? May it please the court? First I'd like to, I know my opponent did not address issue number three, but I would like to say a few words about that one. The state asks that this court not take judicial notice of the internet site listed in defendant's reply brief, which defendant claims would show that the date that the 48-hour episode aired as it is not a matter of common knowledge or an official internet site such as a department corrections site. So it's not an appropriate matter of which to take judicial notice. Also, the state's response at the trial level to defendant's petition did not set up a genuine dispute as to a material fact, but attacked the sufficiency of defendant's petition and affidavit. I just wanted to say that real quick. In response to issue number one, the state is maintaining that the trial court properly denied defendant's motion for post-trial forensic testing pursuant to the statute under a Supreme Court case, People v. Stoker, S-T-O-E-C-K-E-R, under section 116-3, that the defendants seeking additional testing of evidence which has already been subjected to testing have a greater burden to establish their case. So not only does the statute establish a burden that the defendant must meet, but if they've already had it tested, they must meet a greater burden to establish their case than those defendants whose evidence has not been tested. As they must show that the additional testing is likely to produce more probative results than the previous test. I would direct this court to 116-3C2. Defendant must establish that the scientific method requested is generally accepted within the relevant scientific community. In this case, we believe defendant has not established that the time his motion was ruled on, November of 2013, that low copy number touch DNA testing was scientifically accepted or that established methods for determining tissue origin have been developed. I believe touch DNA refers to testing a small amount of DNA, not necessarily skin cells, and defendant is asking that the hammer be tested to prove that Harrington's skin cells are on that hammer, not necessarily just DNA, skin cells. And I don't believe that defendant has established that the scientific method requested would yield those types of results or that they're generally accepted within the relevant scientific community. In this case, what needed to be done in order to establish the touch DNA as a scientifically accepted method and what, in fact, was done at the trial court level? I don't believe it was even addressed. I'm not really positive that it was even... Defendant definitely did not establish that it was a scientifically accepted method. But what was done in an effort to do that, to establish that? Nothing. I don't believe anything was done. I think that's a major problem for defendant. Because I don't think it was even alleged that this is a reliable scientific method and anything cited in his motion or whatever for scientific testing to establish what... that his method would determine skin cells versus brain matter cells or skin cells versus blood or whether the amplifications would produce a more accurate result. In fact... Even if skin cells were detected on the hammer, those being inheritance, does that prove actual innocence or tend to show actual innocence? I don't believe so. Because I think that the crime scene was just such a mess of blood and everybody's touching everybody. I don't believe that even if they found Harrington's DNA on that hammer, that it would prove anything. Well, if there was evidence that would support Harrington having held the hammer, that would certainly be inconsistent with the state's case, correct? Yes. Yes, it would. Would it distinguish between having held the hammer as compared to just having touched the hammer? No, it wouldn't. I mean, you don't know when. Because those are two very different things. Right. And apparently Harrington was in the dining room. It appears that he sat at the dining room table where the hammer was. He put items on the dining room table. I mean, there could have been contact of some sort with the hammer before the crime even occurred. As far as the hammer, according to my research, some items are not recommended for collection of touched DNA. Samples include items heavily soaked in the victim's blood or bodily fluid such as the hammer here. In this case, the hammer is covered with DNA. This is not a touched DNA case. In addition, the DNA on the hammer is a complex mixture. Its blood and brain matter are visible all over the hammer. Defendant admittedly hit Harrington in the chest with the hammer. And Harrington's blood is on Harrington's shirt. So when he hit the shirt with the hammer, Harrington's DNA could be on the hammer. So it may be no surprise if Harrington's DNA is on the hammer and that would prove nothing. As far as the shirt, defendant's T-shirt, 10 stains were cut out of the T-shirt for purposes of blood type analysis. Therefore, some of the shirt is missing. If the T-shirt is subjected to touch DNA low copy number analysis and no DNA from defendant is found on what is left of the shirt, that means nothing since some of the shirt is missing anyway. In addition, defendant could have turned Harrington over, touching only his skin or something else. And finally, whether defendant rolled Harrington over is a collateral issue. It's not even central to the case. New testing will not refute other evidence of guilt, such as defendant's incriminating statements to Deanne Schultz. And I didn't write all these down, but I'm just going from memory. Something like, dead men don't talk. It'd be simpler if she was dead. All you have to do is go in and find the body. Testing will not refute the position of the bodies and the blood scatter as compared to defendant's version of the crime, which were incongruent. Defendant's conflicting accounts of the shooting of Harrington and the note found in Harrington's vehicle indicating that he had pre-arranged an appointment with defendant. Finally, I think testing would be merely cumulative, but there are already considerable blood, stain, and DNA evidence already presented at trial. And so I don't believe that the testing is warranted in this case. Ms. McClain, the statute, Section 116-3, that deals with this testing, it talks about the prime patient case that the defendant must present in order to obtain this additional testing. And subparagraph C says the trial court shall allow the testing under reasonable conditions designed to protect the state's interest in the integrity of the evidence in the testing process upon a determination that, and then there are two requirements. One, the result of the testing has the scientific potential to produce new non-cumulative evidence materially relevant to the defendant's assertion of actual innocence, even though the results may not completely exonerate the defendant. And two, the testing requested employs a scientific method generally accepted within the relevant scientific community. Not being particularly knowledgeable about the process in the trial court as to how these things work, what is the general process? How does a defendant generally make prime patient cases for those two elements? And was that done here? I just know that I'm not a trial attorney either. So I'm not really sure, but I think he had to make allegations in his petition of some sort. For example, in the Stoker case, a Supreme Court case from 2014, the defendant did not allege how the one testing was more beneficial than the other testing, or that it would differentiate male versus female. I think that was the issue. And he needed to allege that the low copy number, touch DNA, was a scientifically acceptable method of determining, you know, what, possibly who killed Donna in this case. And that it would, I think he needed to do, allege, at least allege, and maybe support, you know, support it, that the testing would determine skin cells versus blood or brain matter. I think that's key to this case. That, I mean, so what if the DNA belongs to Harrington? It has to be a skin cell. You know? Anyway, I think he had to allege that, at least in his petition. It should have been addressed. So is there any other questions? Seeing none, thank you. Any rebuttals? Okay, great. Thank you. With respect to your question about how a defendant establishes a pre-missagy case in a motion, you know, I just have an example, one example from the briefs. And it's People v. Rokita. It's a 2000 case from the 5th District. And in that case, the defendant, in his motion, stated that identity was at issue, and this is 116-3 motion, identity was at issue, the central issue in his trial, that evidence to be tested had been subject to a chain of custody sufficient to establish that it had not been substituted. The result of DNA testing based on a PCR reaction, a polymerase chain reaction, had the scientific potential to produce new non-cumulative evidence materially relevant to his assertion of actual innocence. And that PCR-based DNA testing was generally accepted within the relevant scientific community. And in that case, the appellate court held that that was enough. He established enough. And they even go into the strength of the state's case in this case, and they say that that doesn't matter, that he's established those things that are required by Section 116-3, and in that case, that was enough. And I would say that Mark Winger established just as much in this case, but instead of identifying PCR testing as the request to test, he pinpointed LCN DNA testing on touch DNA. And in that other case, it was simply the defendant's assertion, as opposed to having any sort of expert affidavit supporting those assertions, that the appellate court found was sufficient? As far as I could tell, yes. The trial court found that identity was at issue. The chain of custody had been established. The judge actually in the trial level denied the motion, which is why it was on appeal, and stated that because it was a simple identification case, DNA had little to do with the finding of guilt. So they actually talked about those types of things at the hearing, and on appeal, the court reversed. I don't know in this case if the type of testing was challenged by the state in the trial level, but it certainly wasn't an issue for the appellate court. And in this case, the state didn't challenge the reliability of the DNA testing at the trial level below. And in fact, the discussion, the ruling on this DNA motion, had nothing to do with the type of testing that Mark Winger was requesting. The trial court erroneously re-relied on its earlier ruling on Mr. Winger's first DNA motion, which didn't ask for LCN testing. So the trial court erred in, I mean, no party brought it up. No party disputed it. The trial court didn't rule on that basis, and the appellate court shouldn't either. One other fact that I wanted to point out was that Mark Winger, with his pro se DNA motion, this one that's relevant today, he did attach several articles about low copy number DNA, and an article about touch DNA. So it was in there, and he did provide enough evidence for the court to rule on that. I think that's essentially all I wanted to point out. Again, for the reasons stated in our briefs and today, I ask that the court reverse the trial court's denial of Mark Winger's DNA motion, and also his two 214.01 petitions. Okay. Thanks to both of you. The case is submitted. The court stands in recess until after lunch.